UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

KENNETH GATEWOOD, )
)
Plaintiff, )
) Civil Action No. 0:14-CV-138-HRW
v. )
)
WARDEN GARY BECKSTROM, *et* ) **MEMORANDUM OPINION**
*al.*, ) **AND ORDER**
)
Defendants. )

\*\*\*\*    \*\*\*\*    \*\*\*\*    \*\*\*\*

Plaintiff Kenneth Gatewood is an inmate confined by the Kentucky Department of Corrections ("KDOC") in the Eastern Kentucky Correctional Complex ("EKCC"), located in West Liberty, Kentucky. Gatewood has filed a *pro se* civil rights complaint asserting constitutional claims under 42 U.S.C. § 1983. Gatewood alleges that the defendants, all EKCC officials,[1] violated and/or "manhandled" his right to due process of law by unlawfully dismissing from his prison job at the EKCC; failing to properly investigate his complaints and/or respond to his institutional grievances; and by wrongfully refusing to transfer him to another KDOC facility. Gatewood alleges that the same actions or omissions by

---

[1] The named defendants are: (1) Gary Beckstrom, Warden of the EKCC; (2) Keith Helton, Deputy Warden of the ECKK; (3) Mike Sparks, Unit Administrator/Assistant Transfer Coordinator of the EKCC; (4) Jesse Ferguson, Unit Administrator/Assistant Transfer Coordinator of the EKCC; and (5) John Holloway, Deputy Warden of Programs at the EKCC.

the defendants amounted to deliberate indifference to his well-being. Gatewood has been granted *in forma pauperis* status in a separate order.

The Court has conducted a preliminary review of Gatewood's complaint because he asserts claims against government officials and because he has been granted pauper status. 28 U.S.C. §§ 1915(e)(2)(B), 1915A. Because Gatewood is not represented by an attorney, the Court liberally construes his claims and accepts his factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). As explained below, the Court determines that Gatewood has failed to state a claim upon which relief can be granted, and that his § 1983 complaint must be dismissed with prejudice.

## ALLEGATIONS OF THE COMPLAINT

Gatewood alleges that when he reported to his maintenance prison job at the EKCC on August 27, 2014, his supervisor informed him that he had been terminated from that position. [D. E. No. 1, p. 3, ¶ 17] Gatewood then received a "Job Dismissal" form, signed by the EKCC Work Supervisor, Work Program Director, and Department Head. The reason provided on the form was, "Lied when asked a direct question." [*Id.*,¶ 18; *see also* "Job Dismissal," D. E. No. 1-2, p. 1] The following day, August 28, 2014, Gatewood submitted an "Inmate Grievance Form," stating that his dismissal was the result of a personal conflict

between him and Defendant Keith Helton and other EKCC officials; that Helton had harassed him; and that his due process rights had been violated by the termination of his prison job. [D. E. No. 1-2, pp. 3-4] In his grievance form, Gatewood asked that the Committee, "Take a fearless, thorough, moral investigation into the matter, and see to it that the appropriate authorities are notified and that these acts and omission are brought to and [sic] end." [*Id.*, p. 3]

Gatewood states that, two days later, on August 29, 2014, he learned from Margaret Jenkins, EKCC Case Treatment Officer, that "...no conflict was lodged into inmate's management file with Defendant Helton." [D. E. No. 1, p. 3, ¶ 20] On September 2, 2014, Sarah Potter, EKCC Grievance Coordinator, returned Gatewood's grievance to him. Potter rejected the grievance, stating, "The hiring and firing process is non-grievable due to being a classification decision according to CPP 14.6." [D. E. No.1-1, p. 2, ¶ 9][2]

In another document which Gatewood submitted, entitled "Notice," he alleged that he is suffering from "...indifference with the correctional staff." [D. E. No. 1-5]. Gatewood appears to claiming that the EKCC staff either failed to properly investigate his grievance(s), or just ignored his grievance(s). Gatewood

---

[2] Potter is referring to KDOC Corrections Policies and Procedures 14.6, entitled *Inmate Grievance Procedure.*" Potter correctly states that classification issues are "non-grievable," but having reviewed Section II (C), entitled "Non-Grievable Issues," the Court finds no provision which expressly states that the decision to terminate an inmate from his prison job is "non-grievable." However, since a discussion of complete administrative exhaustion is not necessary to determine the merits of this case, the Court will not delve into that aspect in further detail.

further alleges that when he objected to the fact his complaints about Defendant Helton's harassment of him went undocumented, he was "...subjected to future suffering and pain." [*Id.*, p. 4, ¶ 25] On this issue, Gatewood further alleges that Warden Beckstrom failed to "...acknowledge or investigate or delegate a subordinate to investigate claims of harassment towards Plaintiff from Defendant Helton," *id.*, p. 4, and that Warden Beckstrom "...failed to provide him with information about such claim...." [*Id.*]

After his dismissal from his prison job, Gatewood requested a transfer to another KDOC facility. [*Id.*, p. 4, ¶ 6] On September 2, 2014, Defendant John Hollway, Deputy Warden of Programs, responded that Gatewood's transfer request is pending; that the EKCC has a prison population of over 1700; that the KDOC is processing transfer requests which predate Gatewood's transfer request; and that Gatewood "...should work on gaining some patience and eventually your time for transfer will happen. I also encourage you to remain positive and seek goals for yourself that is attainable at EKCC." [D. E. No. 1-1, p. 1]

Gatewoood alleges that the defendants have violated his right to due process of law by dismissing him from his prison job; failing to properly investigate, document, and respond to, his grievances complaining about Defendant Helton; and by refusing immediately approve his transfer to another KDOC facility. As a

4

prisoner being held in state custody, Gatewood's claims on these issues fall under the Fourteenth Amendment of the U.S. Constitution, which guarantees due process of law. Additionally, Gatewood claims that these actions and/or omissions amount to deliberate indifference to his well-being; "deliberate and intentional misconduct;" the "unnecessary and wanton infliction of pain;" and failure to protect him from harm, all in violation of his rights guaranteed by the Eighth Amendment of the U.S. Constitution, which forbids cruel and unusual punishment. *See id.*, pp. 5-6.

Gatewood contends that the defendants' actions and/or omissions, has caused him to suffer mental anguish and emotional distress. [*Id.*, p. 4]. Gatewood further alleges that the loss of his prison job and the resulting loss of wages from that prion job qualify as a physical injury that enables him to assert a claim alleging mental anguish. [*Id.*, p. 5, ¶ 30]

## RELIEF REQUESTED

Gatewood seeks damages of at least $13,000.00, his fees, court costs, and any other relief to which he is entitled. [*Id.*, p. 6] Gatewood further demands both a permanent and a temporary injunction which: (1) prohibits EKCC officials from terminating an inmate from his prison job without "Due Process of Law Taking Place in Their Decision Making;" (2) prohibits EKCC officials from "…issuing

5

harassing, molesting, communicating and delegating orders...on Plaintiff without Due process...taking place;" and (3) transfers him immediately from the EKCC to another KDOC facility "....to ensure future retaliation is not taken against Plaintiff." [D. E. No. 1-6, pp. 1-2]

## DISCUSSION

To the extent that Gatewood alleges that he was terminated from his prison job without due process of law, he states no claim for relief. A prisoner's loss of job assignment is not a protected liberty interest because it does not impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life. *Williams v. Straub*, 26 F. App'x 389, 391 (6th Cir. 2001) (citing *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995)). In other words, prisoners have no constitutional right to prison employment or a particular prison job. *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *Martin v. O'Brien*, 207 F. App'x 587, 590 (6th Cir. 2006).

To the extent that Gatewood alleges that the defendants' refusal to immediately transfer him to another KDOC facility violates his right of due process of law and/or subjects him to cruel and unusual punishment, he again states no claim for relief. The Commonwealth of Kentucky has not adopted any policy giving rise to Gatewood's having a protected interest in remaining in a

particular institution; the transfer of prisoners is within the discretion of the KDOC. *See* Ky. Rev. Stat. Ann. § 196.070(5). It is well established that transfers and prison assignments are functions wholly within the discretion of prison administrators and correctional authorities, *see Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225, (1976), and that prisoners have no constitutional right to be confined in a particular institution or to enjoy a certain classification. *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995). The decisions to transfer a prisoner to another facility, or to deny a prisoner's request to be transferred to another facility, are simply the "ordinary incidents of prison life," which do not implicate an inmate's protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Gatewood next alleges that EKCC Warden Gary Beckstrom, Deputy Warden Keith Helton, and/or Deputy Warden of Programs John Holloway failed to respond to his various complaints and/or administrative grievances in a manner which he deemed appropriate, and that the EKCC's grievance process was generally unsatisfactory or unresponsive to his concerns. Gatewood thus alleges that he was denied due process of law guaranteed under the Fourteenth Amendment of the U.S. Constitution. On this issue again Gatewood also fails to state a claim upon which relief can be granted, because the mere denial of prisoner

grievances by supervisory or higher-ranking administrative officials is insufficient personal involvement for imposing § 1983 liability. the denial of a grievance or the failure to act upon the filing of a grievance is insufficient to establish liability under § 1983. *See Johnson v. Aramark*, 482 F. App'x 992, 993 (6th Cir. 2012); *Alder v. Correctional Medical Services*, 73 F. App'x 839, 841 (6th Cir. 2003); *Martin v. Harvey*, 14 F. App'x. 307, 309 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Further, prisoners have no inherent constitutional right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Overholt v. Unibase Data Entry, Inc.*, 221 F.3d 1335, 2000 WL 799760, at *3 (6th Cir. June 14, 2000) (Unpublished Table decision); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).

Gatewood next alleges that Defendant Keith Helton harassed him and was instrumental in having him removed from his prison job, but as discussed, Gatewood had no protected liberty interest in maintaining that prison job. Other than the loss of his prison job, it is unclear what other type of "harassment" Gatewood allegedly experienced at the hands of Helton. Only deprivations denying "the minimalized measure of life's necessities" constitute and Eighth Amendment violation. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Rhodes v.*

*Chapman*, 452 U.S. 337, 347 (1981). Verbal abuse, harassment, and arbitrariness in dealing with inmates, while not condoned, do not violate the Eighth Amendment of the U.S. Constitution. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987).

Gatewood further alleges that the various actions and/or omissions of the EKCC defendants also caused him to experience emotional distress, but federal law prevents inmates from asserting claims of emotional distress absent some type of accompanying physical injury. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). *See also Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1999) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) ("[A] claim of psychological injury does not reflect the deprivation of 'the minimal civilized measures of life's necessities,' that is the touchstone of a conditions-of-confinement case"); *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005). Contrary to Gatewood's assertion, the loss of prison job does not equate into a physical injury. Because Gatewood does not allege that he sustained any type of physical injury, his claims alleging emotional or mental distress distress will be dismissed as frivolous.

Gatewood broadly alleges that the defendants' actions and/or omissions qualified as deliberate indifference to his well-being, deliberate and intentional misconduct, and the "unnecessary and wanton infliction of pain. He also broadly alleges that the defendants have failed to protect him from harm, in violation of his rights guaranteed by the Eighth Amendment of the U.S. Constitution.

The Supreme Court has held that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks and citation omitted). To establish a prima facie claim that defendants were deliberately indifferent to a prisoner's need for protection from assault by another inmate, the prisoner's allegations must satisfy an objective component and a subjective component. *Id.*, at 835–38. The objective component is satisfied by allegations that absent reasonable precautions, an inmate is exposed to a substantial risk of serious harm. *Id.*, at 836. To satisfy the subjective component, a prisoner must allege that the defendant was aware of facts from which the inference could be drawn that a substantial risk of harm would exist if reasonable measures were not taken, that the defendant actually drew the inference, and that the defendant acted in disregard of that risk. *Id.*, at 837. *See also Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010).

Here, Gatewood does not allege facts which even remotely suggest that he was exposed to *any* harm, much less to a "substantial risk of serious harm." Gatewood's claims are based on: (1) vague allegations of harassment, which cannot form the basis of an Eighth Amendment claim; (2) the loss of a prison job, in which he had no constitutionally protected interest; (3) the denial of his request for an immediate transfer to another facility, in which he had no constitutionally protected interest; (4) alleged mental or emotional distress, which, under 42 U.S.C. § 1997e(e), cannot form the basis of a § 1983 claim absent an accompanying physical injury; and (5) the alleged denial of his grievances, the alleged failure to properly investigate and/or "redress" his grievances and complaints, which allegations, even if true, would not subject prison administrators to any form of constitutional liability under § 1983.

Finally, Gatewood seeks both a temporary and a permanent injunction directing the EKCC defendants to take specific actions, and/or to refrain from certain actions. In determining whether to grant a preliminary injunction, a district court must consider several factors: 1) the plaintiff's likelihood of success on the merits; 2) whether the plaintiff may suffer irreparable harm absent the injunction; 3) whether granting the injunction will cause substantial harm to others; and 4) the impact of an injunction upon the public interest. *See Dixie Fuel Co. v. Comm'r of*

*Soc. Sec.*, 171 F.3d 1052, 1059-60 (6th Cir. 1999). While none of these four factors generally is given controlling weight, a preliminary injunction may not issue where no likelihood of success exists on the merits. *See Michigan State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997).

Here, injunctive relief is simply not warranted, because for the reasons set forth above, Gatewood has not demonstrated the likelihood of success on the merits of any of his constitutional claims, and he has not alleged facts showing that he will suffer irreparable harm absent a preliminary injunction. The purpose of a preliminary injunction, to preserve the *status quo* until a trial on the merits can be held, *see Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991), would not be served. According to Gatewood, the present *status quo* in this case is that he has suffered numerous violations of his constitutional rights, but again, for the reasons previously discussed, the Court has determined that all of Gatewood's constitutional claims lack substantive merit. Therefore, no basis exists which would warrant any type of injunctive relief, either temporary or permanent.

Because Gatewood has failed to state a claim upon which relief can be granted as to any of his asserted claims, his § 1983 complaint will be dismissed, with prejudice, and judgment will be entered in favor of the defendants.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) Plaintiff Kenneth Gatewood's 42 U.S.C. § 1983 civil rights complaint [R. 1] is **DISMISSED WITH PREJUDICE**.

(2) Gatewood's request for a temporary and permanent injunction [D. E. No. 1-6] is **DENIED**.

(3) Judgment will be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants: (a) Gary Beckstrom, Warden of the EKCC; (b) Keith Helton, Deputy Warden of the ECKK; (c) Mike Sparks, Unit Administrator/Assistant Transfer Coordinator of the EKCC; (d) Jesse Ferguson, Unit Administrator/Assistant Transfer Coordinator of the EKCC; and (e) John Holloway, Deputy Warden of Programs at the EKCC.

This September 24, 2014.



Signed By
Henry R. Wilhoit, Jr.
United States District Judge